IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

JOSEPH MALACHI LADOUCIER,

                              PLAINTIFF,

           Vs

THE CITY OF NEW YORK, a municipal entity,
NEW YORK CITY POLICE OFFICER
CHRISTOP WILLIAMS, SHIELD NO. 30230,
NEW YORK CITY POLICE OFFICERS
"JOHN DOES 1-10," CHERYL NICHOLS,
RAFAEL REVERON,

                          DEFENDANTS.

_____

INDEX NO.10 CV 5089
(RJH) ECF CASE

COMPLAINT
[JURY TRIAL
DEMANDED]

     Plaintiff JOSEPH MALACHI LADOUCIER, by his attorney, WYLIE M. STECKLOW, complaining of the defendants, respectfully alleges as follows:

## I. PRELMINARY STATEMENT

1.    Plaintiff JOSEPH MALACHI LADOUCIER brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## II. JURISDICTION

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

3.    Plaintiff JOSEPH MALACHI LADOUCIER further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law

claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

### III. VENUE

4.    Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

### IV. JURY DEMAND

5.    Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

### V. THE PARTIES

6.    The Plaintiff is an American citizen and resident of the City of New York, State of New York, and the County of Queens.

7.    Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.    Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

9.    That at all times hereinafter mentioned, the individually named defendant POLICE OFFICER CHRISTOP WILLIAMS, SHIELD NO. 30230 was a duly sworn police officer of said department and was acting under the supervision of said department and according to their official duties.

10.   That at all times hereinafter mentioned, the defendants POLICE OFFICERS "JOHN DOES 1-10" were duly sworn police officers of said

department and were acting under the supervision of said department and according to their official duties.

11.   That at all times hereinafter mentioned, the defendant NEW YORK CITY POLICE OFFICERS CHRISTOP WILLIAMS, SHIELD NO. 30230 and "JOHN DOES 1-10," (collectively, "defendant Police Officers") either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12.   Each and all of the acts of the defendant Police Officers alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

13.   Each and all of the acts of the defendant Police Officers alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

14.   On information and belief, defendant CHERYL NICHOLS is an employee of the US Postal Service.

15.   On information and belief, defendant RAFAEL REVERON is an employee of the US Postal Service.

16.   On information and belief, each and all of the acts of defendants CHERYL NICHOLS and RAFAEL REVERON were undertaken at their own discretion and within the ambit of their personal pursuits and not in the furtherance of their employment with the US Postal Service.

## VI. FACTS COMMON  TO ALL CLAIMS

17.   On the morning of Tuesday, November 24, 2009, at or around 8:30 A.M., plaintiff JOSEPH MALACHI LADOUCIER was riding on an uptown express subway train on the Lexington Avenue Line.

18.   Plaintiff JOSEPH MALACHI LADOUCIER is a responsible professional in his thirties with no prior arrests or convictions.

19.   Plaintiff JOSEPH MALACHI LADOUCIER has not been arrested or convicted of any crime subsequent to the incident giving rise to the instant action.

20.   On information and belief, plaintiff JOSEPH MALACHI LADOUCIER was riding a Lexington Avenue express train uptown towards Grand Central Station.

21.   The train that plaintiff JOSEPH MALACHI LADOUCIER was riding towards Grand Central Station was very crowded.

22.   On information and belief, it is entirely normal for Lexington Avenue Line trains to be very crowded during morning commuter hours in the vicinity of Grand Central Station.

23.   Plaintiff JOSEPH MALACHI LADOUCIER was coming from his home and going to his place of work.

24.   Plaintiff JOSEPH MALACHI LADOUCIER was listening to music using headphones.

25.   Defendant CHERYL NICHOLS was riding in the same express train towards Grand Central Station as plaintiff JOSEPH MALACHI LADOUCIER.

26.   Defendant CHERYL NICHOLS was riding in the same train car as plaintiff JOSEPH MALACHI LADOUCIER.

27.   When the express train that plaintiff JOSEPH MALACHI LADOUCIER and defendant CHERYL NICHOLS were riding reached Grand Central Station, a great number of the passengers on that train sought to exit the train.

28.   The large number of train passengers seeking to exit the train at Grand Central Station caused significant congestion around the open exit doors of the train compartment that plaintiff JOSEPH MALACHI LADOUCIER and defendant CHERYL NICHOLS were riding in.

29.   On information and belief, it is entirely normal for there to be significant congestion around the open exit doors of subway trains arriving at Grand Central Station during morning commuter hours.

30.   Both plaintiff JOSEPH MALACHI LADOUCIER and defendant CHERYL NICHOLS sought to exit the train at Grand Central Station.

31.   In the process of exiting the train at Grand Central Station, plaintiff JOSEPH MALACHI LADOUCIER unintentionally made contact with defendant CHERYL NICHOLS.

32.   On information and belief, it is entirely normal for individuals exiting subway trains at Grand Central Station during morning commuter hours to make unintentional contact in the same or a similar manner as plaintiff JOSEPH MALACHI LADOUCIER and defendant CHERYL NICHOLS did at that time.

33.   Plaintiff JOSEPH MALACHI LADOUCIER was aware that he had made contact with defendant CHERYL NICHOLS as they exited the train.

34.   To the extent that he considered it at the time, Plaintiff JOSEPH MALACHI LADOUCIER felt that the unintentional contact that he made with defendant CHERYL NICHOLS while exiting the uptown express train was within normal tolerances and did not merit particular notice or apology.

35.   On information and belief, defendant CHERYL NICHOLS believed differently.

36.   Defendant CHERYL NICHOLS said something to Plaintiff JOSEPH MALACHI LADOUCIER at that time.

37.   Plaintiff JOSEPH MALACHI LADOUCIER did not hear what defendant CHERYL NICHOLS said to him because he was listening to music on headphones.

38.   Defendant CHERYL NICHOLS continued to address the plaintiff in an apparently hostile manner.

39.   Plaintiff JOSEPH MALACHI LADOUCIER removed one of his headphones to hear what defendant CHERYL NICHOLS was saying.

40.   Defendant CHERYL NICHOLS was saying insulting and instigative things to the plaintiff.

41.   Plaintiff JOSEPH MALACHI LADOUCIER was hurt and offended by the hostile words of defendant CHERYL NICHOLS.

42.   Plaintiff JOSEPH MALACHI LADOUCIER said nothing in return at that time.

43.   Plaintiff JOSEPH MALACHI LADOUCIER and defendant CHERYL NICHOLS exited the uptown express subway train at Grand Central Station.

44.   Plaintiff JOSEPH MALACHI LADOUCIER waited on the uptown Lexington Avenue Line subway platform to transfer to the uptown local 6 train.

45.   At that time, defendant CHERYL NICHOLS was still addressing the plaintiff in a hostile manner.

46.   At that time, defendant CHERYL NICHOLS was encroaching on the plaintiff's personal space in a hostile manner.

47.   At that time, defendant CHERYL NICHOLS was bumping up against the plaintiff in an instigatory manner.

48.   Plaintiff JOSEPH MALACHI LADOUCIER consequently stepped back from defendant CHERYL NICHOLS.

49.   Plaintiff JOSEPH MALACHI LADOUCIER consequently made a rude remark to defendant CHERYL NICHOLS.

50.   Plaintiff JOSEPH MALACHI LADOUCIER consequently pointed out the platform's security cameras to defendant CHERYL NICHOLS.

51.   Plaintiff JOSEPH MALACHI LADOUCIER consequently warned defendant CHERYL NICHOLS that their interaction was on camera.

52.   At that time, defendant CHERYL NICHOLS stepped back, but continued making hostile and offensive remarks to the plaintiff.

53.   Defendant CHERYL NICHOLS subsequently approached the plaintiff again, and again began encroaching on the plaintiff's personal space in a hostile manner.

54.   Plaintiff JOSEPH MALACHI LADOUCIER consequently told defendant CHERYL NICHOLS, in sum and substance, to back off.

55.   Plaintiff JOSEPH MALACHI LADOUCIER then removed himself to another area of the train platform to avoid further confrontation with defendant CHERYL NICHOLS.

56.   An uptown 6 local train arrived at the platform.

57.   Plaintiff JOSEPH MALACHI LADOUCIER boarded the uptown local 6 train.

58.   Defendant CHERYL NICHOLS was not in the same part of the train car as plaintiff JOSEPH MALACHI LADOUCIER in the uptown 6 train.

59.   Plaintiff JOSEPH MALACHI LADOUCIER took the uptown 6 train to 51st Street, which is the first local stop uptown from Grand Central Station on the Lexington Avenue Subway line.

60.   As plaintiff JOSEPH MALACHI LADOUCIER exited the uptown 6 platform at the 51st Street subway stop, he observed defendant CHERYL NICHOLS standing ahead of him on the walkway.

61.   Defendant CHERYL NICHOLS was standing in the center of the walkway, directly in front of the largest exit from the platform, facing against the flow of pedestrian traffic.

62.   Defendant CHERYL NICHOLS was staring at plaintiff JOSEPH MALACHI LADOUCIER as she stood in the middle of the platform.

63.   On information and belief, defendant CHERYL NICHOLS was deliberately waiting for plaintiff JOSEPH MALACHI LADOUCIER at that time and place.

64.   As plaintiff JOSEPH MALACHI LADOUCIER exited the subway station, defendant CHERYL NICHOLS followed him.

65.   At that time, defendant CHERYL NICHOLS was still addressing the plaintiff in a hostile manner.

66.   The plaintiff, who had resumed wearing his headphones, did not listen to defendant CHERYL NICHOLS.

67.   Plaintiff JOSEPH MALACHI LADOUCIER attempted to not communicate with defendant CHERYL NICHOLS in any way at that time.

68.   On information and belief, defendant CHERYL NICHOLS continued making offensive remarks to plaintiff JOSEPH MALACHI LADOUCIER as he exited the subway station.

69.   As soon as he could, plaintiff JOSEPH MALACHI LADOUCIER deliberately distanced himself from defendant CHERYL NICHOLS and began to walk towards his office.

70.   Plaintiff JOSEPH MALACHI LADOUCIER stopped at the café "Prêt a Manger" on the west side of Third Avenue between 53rd and 54th streets to buy coffee for himself and his co-workers.

71.   Plaintiff JOSEPH MALACHI LADOUCIER then crossed to the east side of Third avenue and walked towards his office, stopping at a donut cart in front of the post office on the east side of Third Avenue between 54th and 55th Streets to buy donuts for himself and his co-workers.

72.   After making these purchases, plaintiff JOSEPH MALACHI LADOUCIER's hands were full, as he was carrying several cups of coffee in a coffee tray as well as one or more bags containing donuts.

73.   As plaintiff JOSEPH MALACHI LADOUCIER exited the donut cart line and continued walking towards his office, he observed defendant CHERYL NICHOLS in front of the post office on Third Avenue between 54th and 55th Streets, talking with defendant RAFAEL REVERON and several other individuals.

74.   On information and belief, defendant CHERYL NICHOLS is an employee of the US Postal Service.

75.   On information and belief, defendant CHERYL NICHOLS was speaking with several of her co-workers in front of the post office on Third Avenue between 54th and 55th Streets.

76.   Plaintiff JOSEPH MALACHI LADOUCIER attempted to not communicate with defendant CHERYL NICHOLS in any way at that time.

77.   Plaintiff JOSEPH MALACHI LADOUCIER continued to walk north across 55th Street towards his office.

78.   One of the individuals whom defendant CHERYL NICHOLS had approached outside the post office, defendant RAFAEL REVERON, followed plaintiff JOSEPH MALACHI LADOUCIER across the street.

79.   On information and belief, defendant RAFAEL REVERON began pushing and threatening the plaintiff as they walked north on Third Avenue.

80.   On information and belief, defendant RAFAEL REVERON continued making offensive and threatening remarks to plaintiff JOSEPH MALACHI LADOUCIER as the plaintiff walked towards his office.

81.   Plaintiff JOSEPH MALACHI LADOUCIER attempted to not communicate with defendant RAFAEL REVERON in any way at that time.

82.   On information and belief, defendant RAFAEL REVERON is considerably larger than the plaintiff.

83.   On information and belief, defendant RAFAEL REVERON is an employee of the US Postal Service.

84.   As plaintiff JOSEPH MALACHI LADOUCIER attempted to enter the building within which his office is located, he was tackled to the ground by defendant RAFAEL REVERON.

85.   As a result of defendant RAFAEL REVERON tackling plaintiff JOSEPH MALACHI LADOUCIER, the plaintiff's coffees and bags of food were knocked out of his hands and spilled.

86.   Defendant RAFAEL REVERON struck plaintiff JOSEPH MALACHI LADOUCIER repeatedly after bringing plaintiff JOSEPH MALACHI LADOUCIER to the ground.

87.   Defendant RAFAEL REVERON sat on plaintiff JOSEPH MALACHI LADOUCIER's chest.

88.   Defendant RAFAEL REVERON choked plaintiff JOSEPH MALACHI LADOUCIER.

89.   Plaintiff JOSEPH MALACHI LADOUCIER could not breathe.

90.   Plaintiff JOSEPH MALACHI LADOUCIER was afraid for his life.

91.   On information and belief, security guards from the plaintiff's office building interceded and called the police after observing plaintiff JOSEPH MALACHI LADOUCIER being assaulted by defendant RAFAEL REVERON.

92.   On information and belief, one or more of the security guards specifically instructed defendant RAFAEL REVERON to stop choking the plaintiff.

93.   On information and belief, plaintiff JOSEPH MALACHI LADOUCIER did not strike defendant RAFAEL REVERON at any time, even in self defense.

94.   On information and belief, no one except defendant RAFAEL REVERON alleged or corroborated that plaintiff JOSEPH MALACHI LADOUCIER struck defendant RAFAEL REVERON at any time, even in self defense.

95.   Defendant NEW YORK CITY POLICE OFFICER CHRISTOP WALKER, SHIELD NO. 30230, was one of the responding defendant Police Officers.

96.   On information and belief, some or all of defendant OFFICERS "JOHN DOES 1-10" were also among the responding defendant Police Officers.

97.   One or more of the defendant Police Officers questioned defendant RAFAEL REVERON.

98.   Afterwards, one or more of the defendant Police Officers questioned plaintiff JOSEPH MALACHI LADOUCIER.

99.   The defendant Police Officers asked whether plaintiff JOSEPH MALACHI LADOUCIER had punched "this lady."

100. On information and belief, the defendant Police Officers were referring to defendant CHERYL NICHOLS.

101. The plaintiff denied punching "the lady," whose name was not known to him at that time.

102. The plaintiff admitted that he may have made inadvertent contact with "the lady" while exiting the uptown express train.

103. On information and belief, plaintiff JOSEPH MALACHI LADOUCIER did not strike defendant CHERYL NICHOLS at any time, even in self defense.

104. On information and belief, no one except defendant CHERYL NICHOLS alleged or corroborated that plaintiff JOSEPH MALACHI LADOUCIER struck defendant CHERYL NICHOLS at any time, even in self defense.

105. One or more of the defendant Police Officers placed plaintiff JOSEPH MALACHI LADOUCIER under arrest.

106. One or more of the Defendant Police Officers handcuffed Plaintiff JOSEPH MALACHI LADOUCIER in front of the office building where he worked and works.

107. One or more of the Defendant Police Officers handcuffed Plaintiff JOSEPH MALACHI LADOUCIER in front of employees of the office building where he worked and works.

108. Upon information and belief, one or more of the Defendant Police Officers handcuffed Plaintiff JOSEPH MALACHI LADOUCIER in front of one or more of his fellow employees from the office where he worked and works.

109. On information and belief, none of the Defendant Police Officers observed plaintiff JOSEPH MALACHI LADOUCIER engaging in any illegal act or acts.

110. At no time did Plaintiff JOSEPH MALACHI LADOUCIER resist being arrested.

111. The defendant Police Officers present did not tell the plaintiff what he was being charged with.

112. The plaintiff was charged with one count of 3rd degree assault recklessly causing physical injury under PL 120.00(2), a class A misdemeanor.

113. The plaintiff was charged with one count of 3rd degree assault with intent to cause physical injury under PL 120.00(1), a class A misdemeanor.

114. On information and belief, defendant Police Officer NEW YORK CITY POLICE OFFICER CHRISTOP WALKER, SHIELD NO. 30230, completed and filed the criminal complaint against the plaintiff JOSEPH MALACHI LADOUCIER using information supplied by defendants CHERYL NICHOLS and RAFAEL REVERON, as well as Jerry Pompey.

115. On information and belief, Jerry Pompey is a co-worker of defendant CHERYL NICHOLS and RAFAEL REVERON and also an employee of the United States Postal Service.

116. On information and belief, the criminal complaint against the plaintiff alleged that plaintiff JOSEPH MALACHI LADOUCIER intentionally struck defendant CHERYL NICHOLS.

117. This allegation was false.

118. Plaintiff JOSEPH MALACHI LADOUCIER did not assault or intentionally strike defendant CHERYL NICHOLS.

119. On information and belief, no investigation was undertaken by the defendant Police Officers to verify defendant CHERYL NICHOLS' accusation that the plaintiff intentionally assaulted her.

120. On information and belief, the criminal complaint against the plaintiff alleged that plaintiff JOSEPH MALACHI LADOUCIER screamed threats at defendant CHERYL NICHOLS on Third Avenue.

121. This allegation was false.

122. Plaintiff JOSEPH MALACHI LADOUCIER did not threaten defendant CHERYL NICHOLS at any time or in any manner.

123. Upon information and belief, no investigation was undertaken by the defendant Police Officers to verify the credibility of Jerry Pompey's accusation that the plaintiff screamed threats at defendant CHERYL NICHOLS.

124. On information and belief, the criminal complaint against the plaintiff alleged that plaintiff JOSEPH MALACHI LADOUCIER attempted to strike defendant RAFAEL REVERON before defendant RAFAEL REVERON tackled the plaintiff.

125. This allegation was false.

126. Plaintiff JOSEPH MALACHI LADOUCIER did not strike or attempt to strike defendant RAFAEL REVERON before defendant RAFAEL REVERON tackled the plaintiff or at any time.

127. The facial implausibility of this final allegation of assault should have been obvious to the responding defendant Police Officers because of the spilled coffees and donuts that were strewn on the ground around the scene of defendant RAFAEL REVERON's assault on the plaintiff.

128. The plaintiff did not have a hand free to strike defendant RAFAEL REVERON prior to defendant RAFAEL REVERON knocking his purchases out of his hands.

129. Upon information and belief, employees of the United States Postal Service are commonly known to have a reputation for rage-fueled violence, see, e.g., the usage of "going postal" as a colloquial term for engaging in rage-fueled violence.

130. Upon information and belief, allegations by three postal workers that are advanced to justify a large postal worker's assault on a smaller individual are not reasonably trustworthy on their face, and should be corroborated by independent investigation.

131. Upon information and belief, it is facially implausible that plaintiff JOSEPH MALACHI LADOUCIER, an individual with no prior criminal history whatsoever, would one morning decide to assault and batter two postal workers in the course of his morning commute.

132. Upon information and belief, the allegations of Jerry Pompey and defendants CHERYL NICHOLS and RAFAEL REVERON were cumulative but non-corroborative; nothing that Jerry Pompey alleged confirmed any of the allegations of CHERYL NICHOLS or RAFAEL REVERON, nothing that CHERYL NICHOLS alleged confirmed any of the allegations of Jerry Pompey or RAFAEL REVERON, nothing that RAFAEL REVERON alleged confirmed any of the allegations of CHERYL NICHOLS or Jerry Pompey.

133. Upon information and belief, significant evidentiary gaps were present between the allegations of Jerry Pompey and defendants CHERYL NICHOLS and RAFAEL REVERON.

134. Upon information and belief, the defendant Police Officers ignored the significant evidentiary gaps between the allegations of Jerry Pompey and defendants CHERYL NICHOLS and RAFAEL REVERON in arresting plaintiff JOSEPH MALACHI LADOUCIER.

135. Upon information and belief, the defendant Police Officers ignored the obvious assault of the relatively small and slight plaintiff JOSEPH MALACHI LADOUCIER by the considerably larger and heavier defendant RAFAEL

REVERON, who was observed by building security to have attacked, tackled, choked and sat on the plaintiff.

136. Upon information and belief, the defendant Police Officers arrested plaintiff JOSEPH MALACHI LADOUCIER solely on the basis of the spotty and uncorroborated statements of CHERYL NICHOLS, RAFAEL REVERON and Jerry Pompey.

137. Upon information and belief, the defendant Police Officers did not have probable cause to arrest plaintiff JOSEPH MALACHI LADOUCIER.

138. Multiple security cameras are located at and around the site of defendant RAFAEL REVERON'S assault on the plaintiff.

139. On information and belief, the defendant police officers made no attempt to recover surveillance footage from any of those cameras at the time of the plaintiff's arrest.

140. On information and belief, the surveillance footage from those cameras could dispositively establish the truth or falsity of the allegations of defendants CHERYL NICHOLS and RAFAEL REVERON.

141. No charges were brought against defendant RAFAEL REVERON.

142. At his arraignment, plaintiff JOSEPH MALACHI LADOUCIER was released on his own recognizance.

143. Thereafter, plaintiff JOSEPH MALACHI LADOUCIER was forced to return to court on January 8, 2010.

144. At that time, the Court ordered the District Attorney to obtain the footage from the above-referred surveillance cameras.

145. Plaintiff JOSEPH MALACHI LADOUCIER was forced to return to court on February 25, 2010, when the criminal charges that had been preferred against plaintiff JOSEPH MALACHI LADOUCIER were dismissed by the New York County Criminal Court.

146. At the time of the dismissal of the criminal charges that had been preferred against the plaintiff, the surveillance camera footage referenced above had not been produced by the District Attorney's office.

147. Plaintiff JOSEPH MALACHI LADOUCIER's arrest was the result of false information provided by defendants CHERYL NICHOLS and RAFAEL REVERON, as well as Jerry Pompey.

148. On information and belief, even a cursory investigation into the allegations against plaintiff JOSEPH MALACHI LADOUCIER would have shown those allegations to be without merit.

149. The allegations against plaintiff JOSEPH MALACHI LADOUCIER were legally insufficient to provide the defendant Police Officers with probable cause sufficient to arrest the plaintiff without a warrant.

150. On information and belief, the defendant Police Officers arrested the plaintiff on Tuesday November 24, 2009, at least in part to meet some or all of their "productivity goals" for arrests per month.

151. As a result of the foregoing, plaintiff sustained, *inter alia,* mental injuries, emotional distress, embarrassment, humiliation and deprivation of his constitutional rights.

### FIRST CLAIM FOR RELIEF
### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

152.  Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

153. All of the aforementioned acts of the defendant CITY and defendant Police Officers, their agents, servants and employees, were carried out under the color of state law.

154. All of the aforementioned acts deprived plaintiff JOSEPH MALACHI LADOUCIER of the rights, privileges and immunities guaranteed to citizens of the

United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

155. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

156. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

157. The defendant Police Officers and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

158. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

159. As a result of the aforesaid conduct by defendants, plaintiff JOSEPH MALACHI LADOUCIER was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

160. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time; he was put in fear for his safety and he was humiliated, without probable cause.

## THIRD CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

161. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

162. The defendant Police Officers and Defendant CITY OF NEW YORK had an affirmative duty to intervene on plaintiff JOSEPH MALACHI LADOUCIER's behalf to prevent the violation of his constitutional rights.

163. The individual defendant Police Officers failed to intervene on plaintiff JOSEPH MALACHI LADOUCIER's behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

164. The individual defendant Police Officers failed to intervene on plaintiff JOSEPH MALACHI LADOUCIER's behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which the plaintiff's rights were violated by their affirmative conduct.

165. As a result of the aforementioned conduct of the individual defendants, plaintiff JOSEPH MALACHI LADOUCIER's constitutional rights were violated.

## FOURTH CLAIM FOR RELIEF
## MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

166. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

167. Defendants instigated and issued legal process to place plaintiff JOSEPH MALACHI LADOUCIER under arrest.

168. Defendants arrested plaintiff JOSEPH MALACHI LADOUCIER in order to obtain collateral objectives outside the legitimate ends of the legal process.

169. These objectives include but are not limited to: personal vindication and/or vengeance for defendant CHERYL NICHOLS, personal satisfaction for defendant RAFAEL REVERON and satisfaction of "productivity goals" imposed by

defendant CITY OF NEW YORK for the defendant Police Officers.

170. *Inter alia*, Defendants acted with intent to do harm to plaintiff JOSEPH MALACHI LADOUCIER without excuse or justification.

171. As a result of the aforementioned conduct of the individual defendants, plaintiff JOSEPH MALACHI LADOUCIER's constitutional rights were violated.

## FIFTH CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

172. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

173. Defendants misrepresented and falsified evidence before the District Attorney.

174. Defendants did not make a complete and full statement of facts to the District Attorney.

175. Defendants withheld exculpatory evidence from the District Attorney.

176. Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

177. Defendants lacked probable cause to initiate criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

178. Defendants acted with malice in initiating criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

179. Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

180. Defendants lacked probable cause to continue criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

181. Defendants acted with malice in continuing criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

182. Defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

183. Notwithstanding the perjurious conduct of defendants, the criminal proceedings were terminated in plaintiff JOSEPH MALACHI LADOUCIER's favor on February 25, 2010, when all charges against him were dismissed.

184. Notwithstanding the fraudulent conduct of defendants, the criminal proceedings were terminated in plaintiff JOSEPH MALACHI LADOUCIER's favor on February 25, 2010, when all charges against him were dismissed.

185. Notwithstanding the malicious conduct of defendants, the criminal proceedings were terminated in plaintiff JOSEPH MALACHI LADOUCIER's favor on February 25, 2010, when all charges against him were dismissed.

## SIXTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL*

186. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

187. Defendants arrested and incarcerated plaintiff JOSEPH MALACHI LADOUCIER in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize plaintiff's liberty, well-being, safety and constitutional rights.

188. The acts complained of were carried out by the aforementioned individual defendant Police Officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

189. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

190. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a) wrongfully arresting minority individuals without conducting investigations sufficient to ascertain whether there is probable cause to arrest said persons;

b) wrongfully arresting individuals without warrants and without conducting investigations sufficient to ascertain whether there is probable cause to arrest said persons;

c) wrongfully arresting innocent persons in order to meet "productivity goals" (i.e., arrest quotas).

d) wrongfully arresting persons without warrants and without conducting investigations sufficient to ascertain whether there is probable cause to arrest said persons in order to meet "productivity goals" (i.e., arrest quotas).

191. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the City of New York:

- **Alvin Williams v. The City of New York et al.,** United States District Court, Southern District of New York, 05 CV 4013.

- **Corey Williams v. The City of New York et al.,** United States District Court, Eastern District of New York, 07 CV 5362.

192. The existence of the aforesaid unconstitutional customs and policies may further be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals."

193. The existence of the aforesaid unconstitutional customs and policies may further be inferred from the tapes recordings acquired by WABC-TV/DT, including, among other admissions, a 41st precinct sergeant explaining that each of his officers is held to a twenty summons per month and one arrest per month

enforcement quota, as reported by the media on March 3, 2010.

194. The existence of the aforesaid unconstitutional customs and policies may further be inferred from the tape recordings acquired by the Village Voice, including, among other admissions, an 81st precinct sergeant telling his officers to make "special" arrests as directed by their superiors even if they must void the arrests at the end of their shifts, as reported by the media on May 11, 2010.

195. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiff JOSEPH MALACHI LADOUCIER.

196. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff JOSEPH MALACHI LADOUCIER as alleged herein.

197. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff JOSEPH MALACHI LADOUCIER as alleged herein.

198. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff JOSEPH MALACHI LADOUCIER was falsely arrested and incarcerated.

199. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiff JOSEPH MALACHI LADOUCIER.

200. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of plaintiff JOSEPH

MALACHI LADOUCIER's constitutional rights.

201. All of the foregoing acts by defendants deprived plaintiff JOSEPH MALACHI LADOUCIER of federally protected rights, including, but not limited to, the right:

A. Not to be deprived of liberty without due process of law;

B. To be free from seizure and arrest not based upon probable cause;

C. To be free from unwarranted and malicious criminal prosecution;

D. To be free from malicious abuse of process;

E. To receive equal protection under the law.

202. As a result of the foregoing, plaintiff is entitled to compensatory damages and punitive damages against the defendants in amounts to be determined at trial.

## PENDANT STATE CLAIMS

### FIRST CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### FALSE ARREST

203. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

204. Defendants arrested plaintiff JOSEPH MALACHI LADOUCIER in the absence of probable cause and without a warrant.

205. Defendants caused plaintiff JOSEPH MALACHI LADOUCIER to be arrested in the absence of probable cause and without a warrant.

206. As a result of the aforesaid conduct by defendants, plaintiff JOSEPH MALACHI LADOUCIER was subjected to an illegal, improper and false arrest by the defendant Police Officers and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings.

207. The aforesaid actions by the defendants constituted a deprivation of plaintiff JOSEPH MALACHI LADOUCIER 's rights.

## SECOND CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## FALSE IMPRISONMENT

208. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

209. As a result of the foregoing, plaintiff JOSEPH MALACHI LADOUCIER was falsely imprisoned, his liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated and subjected to handcuffing and other physical restraints.

210. Plaintiff JOSEPH MALACHI LADOUCIER was conscious of said confinement and did not consent to same.

211. The confinement of plaintiff JOSEPH MALACHI LADOUCIER was without probable cause and was not otherwise privileged.

212. As a result of the aforementioned conduct, plaintiff JOSEPH MALACHI LADOUCIER has suffered mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

## THIRD CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## ASSAULT

213. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

214. Defendants' aforementioned actions placed plaintiff JOSEPH MALACHI LADOUCIER in apprehension of imminent harmful and offensive bodily contact.

215. As a result of defendants' conduct, plaintiff JOSEPH MALACHI LADOUCIER has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

## FOURTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## BATTERY

216. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

217. Defendant police officers and defendant RAFAEL REVERON touched plaintiff JOSEPH MALACHI LADOUCIER in a harmful and offensive manner.

218. Defendant police officers and defendant RAFAEL REVERON  did so without privilege or consent from plaintiff JOSEPH MALACHI LADOUCIER.

219. As a result of defendants' conduct, plaintiff JOSEPH MALACHI LADOUCIER has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment and humiliation.

## FIFTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## MALICIOUS PROSECUTION

220. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

221. On or about November 24, 2009, the defendant City of New York, its agents, servants and employees, and the aforesaid defendant Police Officers commenced a criminal proceeding against plaintiff JOSEPH MALACHI LADOUCIER, and falsely and maliciously, and without probable cause, charged plaintiff with crimes.

222. Defendants, with the consent and participation of one another, continued said proceeding despite the fact that they knew or should have known that plaintiff JOSEPH MALACHI LADOUCIER had not committed any crimes, that there were no exigent circumstances justifying a warrantless arrest, and that there was no need for the arrest and imprisonment of plaintiff.

223. Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

224. Defendants lacked probable cause to initiate criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

225. Defendants were motivated by actual malice in initiating criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

226. Defendants misrepresented and falsified evidence before the District Attorney.

227. Defendants did not make a complete and full statement of facts to the District Attorney.

228. Defendants withheld exculpatory evidence from the District Attorney.

229. Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

230. Defendants lacked probable cause to continue criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

231. Defendants were motivated by actual malice in continuing criminal proceedings against plaintiff JOSEPH MALACHI LADOUCIER.

232. Notwithstanding the perjurious and fraudulent conduct of defendants, the criminal proceedings were terminated in plaintiff JOSEPH MALACHI LADOUCIER's favor on or about February 25, 2010, when all charges against plaintiff were dismissed.

233. As a result of the aforementioned conduct, plaintiff JOSEPH MALACHI LADOUCIER suffered mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

## SIXTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## MALICIOUS ABUSE OF PROCESS

234. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

235. Defendants issued legal process to place plaintiff JOSEPH MALACHI LADOUCIER under arrest.

236. Defendants caused to be issued legal process to place plaintiff JOSEPH MALACHI LADOUCIER under arrest.

237. Defendant police officers arrested plaintiff JOSEPH MALACHI LADOUCIER to obtain a collateral objective outside the legitimate ends of the legal process.

238. Defendants caused plaintiff JOSEPH MALACHI LADOUCIER to be arrested to obtain a collateral objective outside the legitimate ends of the legal process.

239. Defendants acted with intent to do harm to plaintiff JOSEPH MALACHI LADOUCIER, without excuse or justification.

240. As a result of the aforementioned conduct, plaintiff JOSEPH MALACHI LADOUCIER suffered mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

## SEVENTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

241. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

242. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

243. The aforementioned conduct was committed by the defendant Police Officers while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

244. The aforementioned conduct was committed by defendants.

245. The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to plaintiff JOSEPH MALACHI

LADOUCIER.

246. As a result of the aforementioned conduct, plaintiff JOSEPH MALACHI
LADOUCIER suffered severe emotional distress, mental injury, together with
embarrassment, humiliation, shock, fright and loss of freedom.

### EIGHTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT HIRING AND RETENTION

247. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and
realleges each and every allegation contained in the above paragraphs with the
same force and effect as if fully set forth herein.

248. Upon information and belief, defendant City of New York failed to use
reasonable care in the hiring and retention of the aforesaid defendant Police
Officers who conducted and participated in the arrest of plaintiff JOSEPH
MALACHI LADOUCIER.

249. Defendant City of New York knew, or should have known in the exercise
of reasonable care, the propensities of the defendant Police Officers to engage in
the wrongful conduct heretofore alleged in this Complaint.

### NINTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT TRAINING AND SUPERVISION

250. Plaintiff JOSEPH MALACHI LADOUCIER repeats, reiterates and
realleges each and every allegation contained in the above paragraphs with the
same force and effect as if fully set forth herein.

251. Upon information and belief the defendant City of New York failed to use
reasonable care in the training and supervision of the aforesaid defendant Police
Officers who conducted and participated in the arrest of plaintiff JOSEPH
MALACHI LADOUCIER.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:        New York, New York

              July 1, 2010

                                   Respectfully submitted,


                                   _____    ~/s/~    _____
                                   WYLIE M. STECKLOW [WS 6012]
                                   10 SPRING STREET – SUITE 1
                                   New York, New York 10012
                                   [212] 566-8000
                                   [212] 202-4952/FAX
                                   ATTORNEY FOR PLAINTIFF