IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSEPH MALACHI LADOUCIER,

                Index No. 10 CV 5089 (RJH) (MHD)

        PLAINTIFF,

vs                                       PLAINTIFF'S MEMORANDUM OF LAW
                                        IN OPPOSITION TO DEFENDANT RAFAEL
THE CITY OF NEW YORK, a            REVERON'S F.R.C.P. 12(B)(6) MOTION TO
municipal entity, et al.,               DISMISS
-----------------------------------------------------------X

### Preliminary Statement:

In this memorandum, Plaintiff Joseph Malachi LaDoucier will briefly address the lacunae in Point II of Defendant Reveron's brief "Memorandum of Law in Support of Defendant Rafael Reveron's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure" ("Defendant Reveron's Memo"). To be clear, Defendant Reveron's Memo does not contest the court's supplemental jurisdiction over Plaintiff's state law claims against Defendant Reveron per se, but instead argues that dismissal of those state law claims is warranted if Plaintiff's jurisdiction-conferring 28 U.S.C. §1983 claims against Defendants City of New York and the Defendant police officers are dismissed pursuant to those Defendants' fully briefed 12(b)(6) motion.

However, discovery in this case has reinforced Plaintiff's initial belief that Defendant Reveron's conduct alleged in Plaintiff's initial and amended pleadings was tortious, but not violative of his civil rights in a manner giving rise to actionable claims pursuant to 28 U.S.C. §1983. Accordingly, and in keeping with the Court's well-settled policy of promoting efficiency in litigation, Plaintiff's counsel reached out to Defendant Reveron's counsel earlier this month and negotiated a stipulation dismissing Plaintiff's claims against Defendant Reveron under 28 U.S.C. §1983. A copy of that stipulation, duly executed by Plaintiff's counsel and Defendant Reveron's counsel, is submitted to the Court annexed to Plaintiff's attorney affirmation in support of the instant memorandum of law as Exhibit "A" thereto.[1]

---

[1] Plaintiff respectfully requests that the Court so-order the attached stipulation upon this submission, and further requests that the Court provide guidance if a different method of submission is required or preferred.

Plaintiff respectfully submits that the annexed stipulation moots Point I of Defendant Reveron's Memo, and that Point II of Defendant Reveron's Memo does not contain any points of law or fact militating towards dismissal of Plaintiff's remaining claims against Defendant Reveron unless Plaintiff's claims against the municipal defendants are first dismissed. As such, Plaintiff submits that Defendant Reveron has not shown grounds for dismissal of any of the state law claims remaining in this action against him at this juncture.

## Statement of Facts:

The Plaintiff, Joseph Malachi LaDoucier, is a responsible professional in his thirties who had no criminal or arrest record whatsoever prior to the incident complained-of here. Plaintiff's First Amended Complaint (hereinafter "Complaint"), ¶¶21-22. Mr. LaDoucier is a mixed-race individual with tan skin, blue eyes, and curly hair that he was wearing in cornrows at the time of the incident giving rise to this action.[2] On the morning of Tuesday, November 24, 2009, at or around 8:30 A.M., Mr. LaDoucier was taking an uptown express train on the Lexington Avenue line to Grand Central-42nd Street as a part of his morning commute from his residence in Brooklyn to his office in midtown Manhattan. Complaint at ¶¶ 6[3], 18, 21, 24. As usual at that hour, the train was packed sardine-tight. Id. at ¶¶22, 23. Mr. LaDoucier was passing the time listening to music on headphones as the train approached Grand Central. Id. at ¶25. When the train arrived at Grand Central, Mr. LaDoucier and many other train passengers pressed and shifted towards the train doors to exit, in a ritual "straphanger shuffle" familiar to any New York City subway commuter. Id. at ¶¶28-30.

Though he did not think it was important at the time, as Mr. LaDoucier participated in the straphanger shuffle from the express train onto the platform at Grand Central, he and another

---

[2] This fact is tendered to the court in opposition to Defendants' FRCP 12(b)(6) motion as an adjudicative fact which the court may take judicial notice of under FRE 201(b)(2) and pursuant to Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993) ("When determining the sufficiency of plaintiffs' claim for *Rule 12(b)(6)* purposes, consideration is limited to... [among other categories,] matters of which judicial notice may be taken....").

[3] Due to a typographical error not discovered until preparation for Plaintiff's prior memorandum of law in opposition to the municipal Defendants' motion to dismiss, Plaintiff's Complaint and Amended Complaint identify Plaintiff as a resident of Queens County, when Plaintiff is in fact a resident of Kings County. Pursuant to F.R.C.P. 8(e), which dictates that pleadings be construed so as to do justice, Plaintiff respectfully requests that the Court and Parties disregard said harmless typographical error.

participant, later identified as Defendant Cheryl Nichols, made inadvertent unintentional contact. Id. at ¶¶32, 34-35. These sorts of unintentional contacts are common on the subway during rush hours, particularly at Grand Central, and Mr. LaDoucier's did not think that straphanger's etiquette required any particular recognition of this contact, as it seemed to be within normal tolerances. Id. at ¶¶ 33, 35. As Mr. LaDoucier attempted to exit the express train, Defendant Cheryl Nichols addressed him, though he did not hear her at first because he was still listening to music on his headphones. Id. at ¶¶32, 37-38. Noticing at length that Defendant Cheryl Nichols was continuing to address him in what seemed to be a hostile manner, Mr. LaDoucier removed one of his headphones to hear what she was saying, and heard Defendant Cheryl Nichols saying rude and hurtful things to him which hurt his feelings. Id. at ¶¶39-42. Mr. LaDoucier did not respond to Defendant Cheryl Nichols' goading as he exited the express train and crossed the platform to wait for the uptown local train. Id. at ¶¶43-45. Defendant Cheryl Nichols followed Mr. LaDoucier, and continued haranguing him on the platform and crowding his personal space in an aggressive manner that is sometimes referred to as "getting in his face." Id. at ¶¶45-47. When Defendant Cheryl Nichols escalated her harassment of Mr. LaDoucier to the point of bumping her body up against Mr. LaDoucier repeatedly while continuing her steady stream of invective, Mr. LaDoucier had enough. Id. at ¶¶46-48. Stepping away from Defendant Cheryl Nichols, Mr. LaDoucier made a rude rejoinder in response to Defendant Cheryl Nichols' continuing verbal abuse, then immediately pointed to the security cameras on the platform and warned Defendant Nichols that their interactions were being recorded. Id. at ¶¶49-52. Defendant Nichols stepped back for a moment while continuing to hurl invective at Mr. LaDoucier, but soon resumed her prior physical crowding of Mr. LaDoucier's personal space as well. Id. at ¶¶53-54. Mr. LaDoucier told Defendant Cheryl Nichols to back off, then sought to put significant distance between himself and Defendant Nichols, walking away from her towards another part of the train platform. Id. at ¶¶55-56.

When the uptown local 6 train arrived, Mr. LaDoucier boarded the train and made sure that he was standing in at least a different part of the train car than Defendant Cheryl Nichols. Id. at ¶¶57-59. Mr. LaDoucier exited the 6 train at the 51st street station, as did many of the train's passengers who had transferred from the uptown express to the local at Grand Central, since 51st Street is the only local stop between the Lexington Avenue Line's express stops at Grand Central and 59th Streets. Id. at ¶60, see fn1. As Mr. LaDoucier walked down the train platform towards the exit, he saw Defendant

Cheryl Nichols standing ahead of him in the center of the pedestrian walkway, faced against traffic and staring fixedly at Mr. LaDoucier, deliberately waiting for him to approach. Complaint at ¶¶61-64. As Mr. LaDoucier approached and passed Defendant Cheryl Nichols on his way to the station exit, she began following him and resumed goading and insulting him. Id. at ¶¶65-66. Mr. LaDoucier, who had put his headphones back on, did not respond to Defendant Cheryl Nichols and tried his best to ignore her continuing verbal abuse. Id. at ¶¶67-69. As soon as he could, Mr. LaDoucier deliberately distanced himself from Defendant Cheryl Nichols and proceeded along his way to work. Id. at ¶70. Throughout this entire encounter and thereafter, Mr. LaDoucier did not strike Defendant Cheryl Nichols, even in self-defense, and the only individual who claimed otherwise was Defendant Cheryl Nichols herself. Id. at ¶¶104-105.

Mr. LaDoucier proceeded towards his office on the east side of 3rd Avenue between 55th and 56th Streets, stopping first at a "Pret a Manger" café on the west side of 3rd Avenue between 53rd and 54th Streets to buy a tray of coffees for himself and his co-workers, then crossing 3rd Avenue at 54th Street to buy donuts for himself and his co-workers from the donut cart in front of the Post Office at 3rd Avenue between 54th and 55th Streets. Id. at ¶¶70-72.

### Enter Defendant Rafael Reveron

His hands filled by a tray of coffees and one or more bags of donuts, Mr. LaDoucier had just resumed walking towards his office when he observed Defendant Cheryl Nichols, Defendant Rafael Reveron and several other individuals speaking in a cluster in front of the post office, where those individuals and the Defendants Cheryl Nichols and Rafael Reveron apparently worked. Id. at ¶¶73-76, 84. Mr. LaDoucier walked away, towards his office, without communicating with any of the individuals who had been speaking in front of the post office, and soon noticed a man who was considerably larger than him, later identified as Defendant Rafael Reveron, following him. Id. at ¶¶78-79, 83.

Defendant Rafael Reveron began to push, threaten and taunt Mr. LaDoucier as they walked, and Mr. LaDoucier did not respond to Defendant Rafael Reveron's words or physical provocations. Id. at ¶¶80-82. As Mr. LaDoucier approached the door to his office building, Defendant Rafael Reveron tackled Mr. LaDoucier to the ground, in the process spilling the coffee and donuts that Mr. LaDoucier was holding. Id. at ¶¶85-86. Once Mr. LaDoucier was on the ground, Defendant Rafael Reveron struck the prone Plaintiff repeatedly in addition to sitting on Mr. LaDoucier's chest and choking Mr.

LaDoucier. Id. at ¶¶87-89 Mr. LaDoucier could not breathe and feared for his life. Id. at ¶¶90-91. Security guards from Mr. LaDoucier's office building called the police, and at least one of them asked Defendant Rafael Reveron to stop choking the Plaintiff. Id. at ¶¶92-93. Throughout this entire encounter and thereafter, Mr. LaDoucier did not strike Defendant Rafael Reveron, even in self-defense, and the only individual who claimed otherwise was Defendant Rafael Reveron himself. Id. at ¶¶94-95.

Police officers arrived on the scene, including Defendant Officer Williams and Defendant Sergeant Hernandez as well as the "John Doe" Defendant Police Officers (collectively, "Defendant Officers"), and began questioning Mr. LaDoucier and Defendant Rafael Reveron. Id. at ¶¶96-99[4], 116. One of the Defendant Officers asked Mr. LaDoucier if he had punched "this lady," presumably referring to Defendant Cheryl Nichols, and Mr. LaDoucier responded that he had not, though he did state that he may have accidentally bumped into her getting off the train. Id. at ¶¶100-103. Despite having not personally observed Mr. LaDoucier engaging in any illegal acts, and without engaging in any further investigation, one or more of the Defendant Officers then arrested Mr. LaDoucier, placing him in handcuffs in front of his office building and in view of one or more of his fellow employees. Id. at ¶¶106-110, 122, 126-131. Mr. LaDoucier did not resist in any way. Id. at ¶111.

In a misdemeanor complaint authorized by Defendant Sergeant Hernandez, sworn out by Defendant Officer Williams, and based entirely on information received from Defendant Cheryl Nichols, Defendant Rafael Reveron and their co-worker, Jerry Pompey, Mr. LaDoucier was charged with two (2) counts of PL §120.00, 3rd Degree Assault, a class A misdemeanor. Id. at ¶¶113-115, 117-118. Based entirely on Defendant Cheryl Nichols' uncorroborated accusation, the misdemeanor complaint falsely alleged that Mr. LaDoucier intentionally struck Defendant Cheryl Nichols. Id. at ¶¶119-122. Based entirely on Jerry Pompey's uncorroborated accusation, the misdemeanor complaint falsely alleged that Mr. LaDoucier screamed threats at Defendant Cheryl Nichols on Third Avenue. Id. at ¶¶123-126. Based entirely on Defendant Rafael Reveron's uncorroborated accusation, the misdemeanor complaint falsely alleged that Mr. LaDoucier intentionally attempted to strike Defendant Rafael Reveron in front of Mr. LaDoucier's office. Id. at ¶¶127-129. This final allegation should have

---

[4] Due to a typographical error not discovered until the preparation of Plaintiff's prior memorandum of law in opposition to the municipal Defendants' motion to dismiss, Defendant Officer Williams is mistakenly identified at ¶96 of the Complaint as "Defendant New York City Police Officer Christop Walker," though his correct shield number is listed. See fn2.

been facially implausible to Police Officers responding to the scene, as Mr. LaDoucier was being held on the ground being beaten by Defendant Reveron in the midst of spilled coffees and donuts when they arrived; given the various food debris, it should have been clear to the Defendant Police Officers that Mr. LaDoucier did not have a free hand to attempt to strike Defendant Rafael Reveron as that Defendant alleged. Id. at ¶¶129-131.

## Relevant Legal Standards:

"In reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted... [the Court] accept[s] as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet, 482 F.3d 184, 191 (2nd Cir. 2007) (internal citation omitted). "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A party's failure to respond to all or part of an opponent's 12(b)(6) motion does not constitute a default warranting dismissal of the complaint; "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." McCall v. Pataki, 232 F.3d 321, 322-3 (2d Cir. 2000)

## Argument: The Defendant Has Not Shown Grounds For Dismissal of Plaintiff's State Law Claims

In Defendant Reveron's Memo, Defendant Rafael Reveron fails to cite any Second Circuit or Southern District case law in support of his Point II heading, which states that "Plaintiff's state law claims should be dismissed." Defendant Reveron's Memo at 5. Further, the case law and statute cited by the Defendant do not support Defendant Reveron's more modestly couched argument in that section that the Plaintiff's state law claims should be dismissed in the event that Plaintiff's Federal claims are dismissed pursuant to the municipal Defendant's motion to dismiss.

In his argument on this point, Defendant Reveron primarily relies on *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) to suggest that state claims should be dismissed when jurisdiction-conferring federal claims are dismissed. While *Gibbs* does discuss federal court jurisdiction over state-

law claims under the prior doctrine of pendent jurisdiction, it has been recognized in this and other Circuits as having been superseded by the current doctrine of supplemental jurisdiction enumerated in 28 U.S.C.§1367. *See, e.g., Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 447 (2d. Cir. 1998) ("We now adopt the interpretation of Section 1367 set forth... [by the Ninth Circuit], and hold that section 1367 has indeed altered *Gibbs*' discretionary analysis.... [i]f subsection 1367(c) were merely to incorporate Gibbs, subsection 1367(c) would be rendered superfluous."). Under the prior doctrine of pendent jurisdiction relied upon by Defendant Reveron, state law claims arising from the same nucleus of operative fact as jurisdiction-conferring federal claims were only heard at the discretion of the sitting District Judge, but the use of the word "shall" in 28 U.S.C. §1367(a) has led the Second Circuit to conclude that the initial grant of jurisdiction over related state law claims is mandatory under the current statutory rule of supplemental jurisdiction. *Itar-Tass* at 447 ("subsection 1367(a) uses the term "shall" which implies that once it is determined that a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy, supplemental jurisdiction over the related claim is mandatory.").

Plaintiff additionally notes that 28 U.S.C. §1367(c) allows for retention of the Plaintiff's state claims by the federal court, or remand of the state claims to state court. Indeed, 28 U.S.C. 1367(c) employs the word "may" to signal that District Courts have discretion to "decline to exercise supplemental jurisdiction over a [state] claim" when "the district court has dismissed all claims over which it has the original jurisdiction." 28 U.S.C. 1367(c)-(c)(3); *see also Itar-Tass* at 447. Nowhere, however, does 28 U.S.C. 1367(c) require dismissal of state claims that are before the Court under supplemental jurisdiction in the event of dismissal of jurisdiction-conferring Federal claims. Second Circuit precedent does not require dismissal in such circumstances either. *See, e.g., Astra Media Group, LLC v. Clear Channel Taxi Media, LLC*, 2011 U.S. App. LEXIS 2949, *5 (2d Cir. N.Y. Feb. 15, 2011) ("the district court was left with only the state-law claims, which were 'otherwise non-removable' to federal court, and the district court had discretion to 'remand' to the state court 'all matters in which State law predominate'[d].").

In fact, even the Third Circuit and Sixth Circuit case law cited by Defendant Reveron on page 7 of Defendant Reveron's Memo merely present dismissal of state claims as one of multiple options available to the court under supplemental jurisdiction when all jurisdiction-conferring federal claims

have been dismissed or abandoned. *See Scott v. Clay County*, 205 F.3d 867, 880 (6th Cir. 2000) ("...[F]ollowing remand, the district court shall initially determine, in its sound discretion, whether to dismiss the plaintiff's remaining state law claims without prejudice, or to exercise supplemental federal jurisdiction over them."(internal citations omitted)); *see also Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("[T]he court was aware that it had the discretion to exercise supplemental jurisdiction over these claims under section 1367, but declined to do so based on the consideration set forth in section 1367(c)(3), namely, the dismissal of all claims over which the court had original jurisdiction.")

## Conclusion:

In sum, Second Circuit precedents hold that even if the Plaintiff's Federal claims in this action are dismissed, the Court is under no obligation to dismiss the Plaintiff's state law claims and may either continue to hear the pending state claims under supplemental jurisdiction or remand the state claims to New York state court. As Defendant Reveron has shown no authority militating towards immediate dismissal of the Plaintiff's supplemental jurisdiction state law claims, dismissal of said claims is not warranted at this time. Further, as the case law cited above demonstrates, even if this Court dismisses the Plaintiff's jurisdiction-conferring Federal claims, the Court is not required to dismiss the Plaintiff's state law claims, but may retain the claims to trial or remand them to state court at its discretion. Defendant Reveron has not set forth a basis for the relief sought by him in the non-mooted portions of the instant motion, and as such the remaining aspect of the instant motion should be denied.

Dated: April 1, 2011
New York, New York

Samuel B. Cohen, Esq. (SC 0622)
Law Offices of Wylie M. Stecklow
Attorney for Plaintiff
10 Spring – N Y C 10012
(212) 566-8000

To:
**David E. Duhan**
Attorney for Defendant Rafael Reveron
118-35 Queens Blvd, Suite 1515,
Forest Hills, NY 11375