UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH MALACHI LADOUCIER,

                        Plaintiff,

      -against-

THE CITY OF NEW YORK, a municipal entity,
REITRED NEW YORK CITY POLICE OFFICER
CHRISTOPHER WILLIAMS, NEW YORK CITY
POLICE SERGEANT JIMMI HERNANDEZ,
NEW YORK CITY POLICE OFFICERS "JOHN
DOES 1-9," CHERYL NICHOLS, RAFAEL
REVERON,

                        Defendants.

10 Civ. 05089 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

      Thanksgiving is a "national holiday that is preeminently part of American history . . . [commemorating] the feast held by the Pilgrims and the American Indians to show thankfulness for the harvest." *Doe v. Wilson Cnty. Sch. Sys.*, 524 F. Supp. 2d 964, 982 (M.D. Tenn. 2007). It is also "a day in which many people do not go to work to kickoff the holiday buying-spree season." *The Formula, Inc. v. Mammoth 8050, LLC*, No. 07-61708-CIV, 2008 WL 60428, at *1 (S.D. Fla. Jan. 3, 2008). But just two days prior to Thanksgiving 2009, plaintiff Joseph Malachi LaDoucier was not in such a festive mood. "On the morning of Tuesday, November 24, 2009, Mr. LaDoucier had a truly terrible morning commute. After inadvertently bumping into a postal worker, Defendant Cheryl Nichols, while exiting a crowded rush hour train, Mr. LaDoucier was verbally abused and stalked by [Nichols], then tackled, stuck and choked in front of his office by [Nichols's] colleague, Defendant Rafael Reveron. To put the proverbial cherry on top of a truly

1

terrible morning," police were called to the scene and LaDoucier was arrested. (Pl.'s Opp'n at 1.) LaDoucier now brings suit under 42 U.S.C. § 1983 alleging false arrest and related federal and state claims; and Defendants the City of New York (the "City"), Police Officer Christopher Williams, and Police Sergeant Jimmi Hernandez (collectively the "City Defendants") move to dismiss. Because police had probable cause to make the arrest based on the putative victim's corroborated account, this motion is GRANTED.

## BACKGROUND

The following facts, drawn from LaDoucier's First Amended Complaint ("FAC"), are accepted as true for purposes of this motion.

On the morning of Tuesday, November 24, 2009, at 8:30 a.m., LaDoucier was riding a crowded uptown Lexington Avenue express train to work. (FAC ¶¶ 18, 22, 24.) As the train pulled into Grand Central Station, LaDoucier sought to exit and switch to the uptown Lexington Avenue local train. (*Id.* ¶¶ 31, 45, 58.) In exiting the crowded train, however, LaDoucier "unintentionally made contact with" Nichols, a United States Postal Service employee. (*Id.* ¶¶ 15, 32.) Nichols took offense and thereafter began a verbal barrage directed at LaDoucier, while also "bumping up against [LaDoucier] in an instigatory [sic] manner." (*See generally id.* ¶¶ 36-48.) The altercation continued as the two waited for the uptown local train, apparently ceased while both rode that train, and then continued again after the two exited the train at Fifty-First Street. (*See generally id.* ¶¶ 46, 57-69.)

Upon reaching the street, LaDoucier was able to separate himself from Nichols. (*Id.* ¶ 70.) He then made two stops while walking towards his office; first at a café to

purchase coffee for himself and his coworkers and second at a street "donut cart." (*Id.* ¶¶ 71-72.) After these purchases, LaDoucier continued towards his office, now with hands full of coffee and donuts. (*Id.* ¶ 73.) Walking down the street, however, LaDoucier saw Nichols outside a post office conversing with Rafael Reveron, another postal worker "considerably larger than" LaDoucier. (*Id.* ¶¶ 16, 74, 83.) Reveron began following LaDoucier, pushed him, and made "offensive and threatening remarks" to him. (*Id.* ¶¶ 79-81.) Just as LaDoucier was reaching his office, Reveron tackled him, scattering the coffee and donuts across the street. (*Id.* ¶¶ 85-86.) Reveron then struck LaDoucier repeatedly and choked him while sitting on his chest. (*Id.* ¶¶ 87-88.) Thereafter, security guards from LaDoucier's office called the police and instructed Reveron to cease his assault. (*Id.* ¶¶ 92-93.)[1]

Police officers, including Officer Williams and Sergeant Hernandez, arrived at the scene a short time later and questioned several people including LaDoucier, Nichols, Reveron, and a third postal worker, Jerry Pompey. (*Id.* ¶¶ 95, 98, 99, 105, 115, 118.) Nichols claimed that LaDoucier struck her, Reveron claimed that LaDoucier had struck him in the street, and Pompey claimed that LaDoucier screamed threats at Nichols. (*Id.* ¶¶ 95, 98, 105, 126.) LaDoucier denied all of the assertions. (*Id.* ¶¶ 95, 99-104, 125, 127-128.) LaDoucier alleges that police undertook no further investigation, despite "multiple security cameras [being] located at and around the site" of Reveron and LaDoucier's struggle. (*Id.* ¶¶ 122, 126, 127, 141-142.) Instead, police proceeded to

---

[1] In his opposition brief, LaDoucier asserts that Nichols called the police; however this allegation is made nowhere in the FAC. (*Compare* Pl.'s Opp'n at 1 ("To put the proverbial cherry on top . . . , Defendant Cheryl Nichols called the police . . . .") *with* FAC ¶ 92 ("security guards from plaintiff's office building interceded and called the police . . . ."); *see also generally* FAC ¶¶ 18-154.) In ruling on this motion, the Court considers the allegations of the complaint, not the factual assertions made by lawyers in briefs. *See Glaser v. The9, Ltd.*, ___ F. Supp. 2d ___, 2011 WL 1106713, at *18 (S.D.N.Y. Mar. 28, 2011).

arrest and handcuff LaDoucier, and charged him with two counts of third degree assault. (*Id*. ¶¶ 106-107, 113-114.)  LaDoucier was released on his own recognizance, and twice again returned to court before those charges were dismissed.  (*Id*. ¶¶ 145-148.)

LaDoucier filed this suit on July 2, 2010, and filed his amended complaint on December 6, 2010.  He brings several claims invoking 42 U.S.C. § 1983, including false arrest, failure to intervene, malicious abuse of process, and malicious prosecution, along with related state law claims.  The City Defendants have now moved to dismiss.[2]  Nichols has neither made any such motion, nor answered the complaint.

**DISCUSSION**

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  If the factual averments permit no reasonable inference stronger than the "mere possibility of misconduct," the complaint should be dismissed.  *Starr*, 592 F.3d at 321 (quoting *Iqbal*, 129 S. Ct. at 1950).  Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting

---

[2] Defendant Reveron previously moved to dismiss, but LaDoucier has since dismissed all claims against Reveron.

4

*Twombly*, 550 U.S. at 557). In applying this standard of facial plausibility, the Court takes all "factual allegations to be true and draw[s] all reasonable inferences in the plaintiff's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). But the Court does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 129 S. Ct. at 1949.

**False Arrest and Probable Cause**

"It is well settled that the existence of probable cause is a complete defense to claims of false arrest and malicious prosecution under § 1983." *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 357, 364 (S.D.N.Y. 2010). Police have probable cause when they have "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant" the reasonable belief "that an offense has been or is being committed by the person to be arrested." *Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008). A district court must analyze the "totality of the circumstances" then known to the arresting officers in deciding whether probable cause exists. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002); *Howard v. City of New York*, No. 08 Civ. 6085, 2010 WL 1914747, at *1 (S.D.N.Y. May 5, 2010) ("In considering whether there is probable cause for an arrest, courts 'must consider those facts available to the officer at the time of the arrest and immediately before it.'" (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996))). Moreover, "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to

5

believe is telling the truth." *Rodriguez v. New York City Transit Auth.*, No. 06 Civ. 13762, 2009 WL 3817298, at *6 (S.D.N.Y. Nov. 10, 2009). In addition,

> [o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. Although a better procedure may be for the officers to investigate plaintiff's version of events more completely, an arresting officer does not have to prove plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest.

*Murray v. United Parcel Service, Inc.*, 614 F. Supp. 2d 437, 444 (S.D.N.Y. 2009) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006)). Finally, a mere lack of an ensuing criminal charge does not undermine the existence of probable cause. *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 421 (S.D.N.Y. 2002); *see also Rowe v. City of Rochester*, No. 00-CV-6333, 2002 WL 31974537, at *9 (W.D.N.Y. Dec. 23, 2002) ("[T]he eventual disposition of the criminal charges is irrelevant to the probable cause determination.").

LaDoucier's own allegations in the FAC demonstrate that probable cause existed here. A "person of reasonable caution" who (1) heard the corroborative testimony[3] of three eyewitnesses, including the putative victim; and (2) saw the signs of a struggle such as food and drink spilled across the street; "would possess sufficient information to

---

[3] LaDoucier argues in several places that Nichols's, Reveron's, and Pompey's accounts were merely cumulative but not corroborative. (*See, e.g.*, FAC ¶ 135 ("[T]he allegations of [Pompey, Nichols, and Reveron] were cumulative but non-corroborative; nothing that [Pompey] alleged confirmed any of the allegations of [Nichols or Reveron]. . . ."); Pl.'s Opp'n at 18.).) LaDoucier does not explain what this distinction means, and it appears to be a distinction without a difference and that, in fact, the accounts were both cumulative and corroborative. Cumulative means, *inter alia*, "acquiring or increasing in force or cogency by successive additions." IV Oxford English Dictionary 127 (2d ed. 1991). The accounts are cumulative because each adds some factual material tending to demonstrate LaDoucier's hostility towards Nichols. Corroborative means, *inter alia*, "[o]f a legal act, statement, evidence, etc.: Confirmatory." III Oxford English Dictionary 969 (2d ed. 1991). The accounts are corroborative because each tends to confirm that, on the morning in question, LaDoucier was acting hostile towards Nichols, whether by physical force or verbal assault.

believe" that LaDoucier had, in fact, attacked or threatened Nichols. *See Williams*, 535 F.3d at 79; *Blair v. City of New York*, No. 03 CV 1485, 2009 WL 959547, at *6 (E.D.N.Y. Mar. 31, 2009) (corroborative testimony of three witnesses sufficient to establish probable cause); *Rizzo v. Edison, Inc.*, 419 F. Supp. 2d 338, 347 (W.D.N.Y. 2005) (same); *see also Taylor v. City of Syracuse*, No 5:05-CV-750, 2009 WL 961432, at *5 (N.D.N.Y. Apr. 7, 2009) (one eye-witness, absent reason to doubt veracity).[4]

When officers have reason to doubt a putative victim's veracity, that doubt might weigh against probable cause. *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). But LaDoucier fails to allege that his arresting officers had reason to doubt Nichols's, Reveron's and Pompey's statements. LaDoucier describes those witnesses' assertions to the arresting officers as "outlandish, inconsistent and unreliable," (Pl.'s Opp'n at 13), but the reasoning he advances for that characterization fails to support it. Specifically, LaDoucier points out that he alleges in the FAC that the witnesses' statements were uncorroborated; and asserts (1) that he could not have attacked Reveron because he was carrying coffee and donuts; (2) that "postal workers have a reputation for rage-fueled violence"; (3) that the "allegations advanced by three postal workers to justify a large postal worker's assault on a smaller individual should be corroborated"; (4) that LaDoucier would not have "besmirch[ed] his theretofore clean criminal record by

---

[4] *Blair*, *Rizzo*, and *Taylor* are cases dismissed upon the court's granting defendants summary judgment. The Court here, however, sits on defendants' motion to dismiss. But the legal principles stated in those cases apply here with equal force. Even accepting all the allegations in the FAC as true, as the Court must on this motion, the factual scenario presented is insufficient as a matter of law to allege a false arrest claim as the FAC itself asserts that Nichols, Reveron, and Pompey all informed the police of LaDoucier's alleged aggression towards Nichols. (*See, e.g.*, FAC ¶¶ 95, 98, 105, 126); *see also Michaels v. City of New York*, No. 10 Civ. 2666, 2011 WL 570125, at *6 (S.D.N.Y. Feb. 16, 2011) (dismissing false arrest claim on motion to dismiss when court, accepting complaints allegations as true, found that police would still have probable cause); *Terio v. Michaud*, No. 10 Civ. 4276, 2010 WL 6032586, at *4 (S.D.N.Y. Dec. 3, 2010) (noting that Section 1983 false arrest claim fails at motion to dismiss stage "if the plaintiff's version of events establishes probable cause to arrest." (citing *Tierney v. Davidson*, 133 F.3d 189, 194 (2d Cir. 1998))).

assaulting multiple postal workers"; and (5) that inconsistencies exist between Nichols's account to police on the scene and the allegations she swore to in LaDoucier's criminal complaint a month and a half later. (*Id*. at 16-17.) The allegations in the FAC that the statements were uncorroborated, however, are purely conclusory and, indeed, the statements at issue were corroborative of LaDoucier's aggression towards Nichols. (*See supra*, note 2.) Moreover, LaDoucier's clean criminal record and inconsistencies between Nichols's statements—to the extent they exist—were not available to officers when they made the arrest and thus cannot be considered as part of the "totality of the circumstances" by which to judge probable cause.[5] *See Hargroves v. City of New York*, No. 10-952-cv, 2011 WL 605816, at *4 (2d Cir. Feb. 22, 2011) (reversing district court's denial of defendants' summary judgment motion and noting that "totality of the circumstances" inquiry is into "whether the facts known by the arresting officer *at the time of the arrest* objectively provided probable cause . . . ." (emphasis added)).[6] Similarly, reasonable officers could have come to any one of several conclusions as to how the coffee and donuts reached the ground, and were not obligated to accept any assertion from LaDoucier that their eruption from his hands was due to Reveron's tackle. *See Murray*, 614 F. Supp. 2d at 444 (once probable cause exists, officers are not required to investigate the suspect's version of events before arresting). Finally, the argument that postal workers' complaints or allegations to police deserve any less merit than those of non-postal workers barely warrants mentioning.

---

[5] In his opposition brief, LaDoucier continuously points out the inconsistencies among Nichols's various stories. (*See, e.g.*, Pl.'s Opp'n at 18 ("Since the inception of the instant action, Defendant Nichols has again changed her story . . . .").) This issue, however, is irrelevant on the current motion. Whether LaDoucier or Nichols or Reveron was actually the aggressor in this incident, or whether Nichols has proved untrustworthy after this action's filing, does not factor in to an analysis of what police knew and saw responding to the scene and whether their actions were constitutional under the circumstances.

[6] *See supra*, note 4.

The cases LaDoucier cites do not compel a different result. LaDoucier cites, for example, *LaFontaine v. City of New York*, No. 08 Civ. 1555, 2009 WL 3335362 (S.D.N.Y. Oct. 14, 2009) (adopting Report and Recommendation) for the proposition that "the claims of a complaining witness, standing alone, are not necessarily sufficient to supply probable cause." (Pl.'s Opp'n at 14.) But in that case the court held that the allegation of a single eyewitness that the suspect/plaintiff was brandishing a gun was enough to establish probable cause. *See LaFontaine*, 2009 WL 3335362, at *5. Indeed, the Court went on to state that when an arresting officer does not have reason to doubt a witness's veracity, "nothing beyond the victim's testimony is required to make a lawful arrest." *Id*. at *6.[7]

LaDoucier also cites Judge Haight's 1996 opinion in *Wu v. City of New York*, 934 F. Supp. 581 (S.D.N.Y. 1996) for the proposition that uncorroborated allegations by an eyewitness or victim do not establish probable cause absent investigation and corroboration. (Pl.'s Opp'n at 15.) But that case merely reaffirms the law in this Circuit that "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." *Wu*, 934 F. Supp. at 587. Alternatively, even emphasizing the court's language that the law "stresses the importance of investigation and corroboration," *id*., LaDoucier's argument would still fail. The Court refused to find probable cause in *Wu* because there the arrest was made

---

[7] LaDoucier argues that probable cause existed in *LaFontaine* because the eyewitness's complaint was corroborated by the facts that the eyewitness also identified the plaintiff's car and that the plaintiff did, indeed, possess a gun. (Pl.'s Opp'n at 14-15); *see LaFontaine*, 2009 WL 3335362, at *2. However, Judge Dolinger's Report and Recommendation made quite clear that the witness's "report[] that plaintiff had pulled out a gun and waved it at him . . . was enough to establish a reasonable likelihood that plaintiff had committed [the crime in question]." *LaFontaine*, 2009 WL 3335362, at *5. And even if Judge Dolinger did rely on other facts without explicitly saying so, the case certainly does not stand for the proposition that the eyewitness's complaint, alone, can never be sufficient to establish probable cause.

9

pursuant to a single account by the putative victim whose story plainly contradicted the facts presented to the officers at the scene, and whose version of events the arresting officers did not even dispute was untrue. *Id*. at 584-85, 588-89. Here, however, three witnesses, including the victim, told stories with identical themes that all pointed towards LaDoucier's aggression towards Nichols; the only account those witnesses' assertions contradicted was LaDoucier's. Moreover, the courts that cite to the language quoted from *Wu* do so to stress the importance of investigation when police are confronted with "plainly exculpatory evidence" or "significant evidentiary gaps or uncertainties." *See, e.g.*, *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 386 (S.D.N.Y. 2009). Here, however, the evidence alleged in the FAC that was presented to the officers on the scene was not significantly uncertain, and the FAC does not allege that plainly exculpatory evidence existed, or (adequately) that officers had reason to doubt the witnesses and victim.

Because the arresting officers had probable cause even accepting all allegations in the FAC as true, LaDoucier's false arrest claim fails.

**Remaining Federal Claims**

In addition to his false arrest claim, LaDoucier also alleges failure to intervene, malicious abuse of process, and malicious prosecution against the arresting officers, and municipal liability against the City. Each of these counts, however, either requires the existence of an underlying constitutional violation—such as a false arrest—or is excused by the existence of probable cause to make an arrest. *See Taveres v. City of New York*, No. 08 Civ. 3782, 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010) (failure to intervene

claim requires, *inter alia*, that officers failed to intervene to prevent other officers' *constitutional* violation); *Irish v. The City of New York*, No. 09 Civ. 5568, 2010 WL 5065896, at *6 (S.D.N.Y. Dec. 6, 2010) ("probable cause negates a claim for abuse of process"); *Sforza v. City of New York*, No. 07 Civ. 6122, 2009 WL 857496, at *16 (S.D.N.Y. Mar. 31, 2009) (malicious prosecution)[8]; *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (municipal liability under *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978) requires, *inter alia*, an underlying constitutional violation).  Accordingly, each of these counts is dismissed.

Finally, to the extent LaDoucier intended to assert his federal Section 1983 claims against Nichols, those claims must be dismissed because LaDoucier alleges that Nichols was *not* acting under the color of state law (*see* FAC ¶ 17), and Section 1983 requires that the defendant have acted under the "color of any statute, ordinance, regulation, custom, or usage, of any State."  42 U.S.C. § 1983; *Minter v. Cnty. of Westchester*, No. 08 Civ. 7726, 2011 WL 856269, at *6 (S.D.N.Y. Jan. 20, 2011).

---

[8] "The existence of probable cause at the time of arrest may not be sufficient to provide probable cause for a prosecution." *Sforza*, 2009 WL 857496, at *16.  This is so because "evidence could later surface which would eliminate that probable cause." *Id.* (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003). Plaintiff, however, must allege "some intervening fact" that revealed "the groundless nature of the charge," and "[w]ithout any evidence supporting the vitiation of probable cause," the probable cause at the time of arrest immunizes the malicious prosecution claim. *Id.*  Here, LaDoucier alleges that certain security camera footage would have undercut the existence of probable cause; but he also alleges, specifically, that no law enforcement personnel, nor anyone at the District Attorney's Office, has ever seen the footage. (*See* FAC ¶¶ 141-143, 148-149.)  In other words, the evidence that allegedly would have vitiated probable cause was admittedly never inspected by anyone participating in the prosecution of LaDoucier.  Accordingly, the probable cause that existed at the time of LaDoucier's arrest continued to exist at the time of his arraignment and return trips to court.

**State Law False Arrest, False Imprisonment, Malicious Prosecution, Malicious Abuse of Process Claims, Negligent Hiring, and Negligent Supervision Claims**

As with the equivalent federal claims, probable cause is a full defense to state law claims of false arrest, false imprisonment, malicious prosecution, and malicious abuse of process. *Brown v. Starrett City Assocs.*, No. 09-CV-3282, 2011 WL 1897651, at *4 (E.D.N.Y. May 18, 2011) (false arrest); *Adam v. Metropolitan Transp. Auth.*, No. 07 Civ. 8807, 2011 WL 891441, at *6 (S.D.N.Y. Mar. 15, 2011) (false imprisonment and malicious prosecution); *Pierre v. City of New York*, No. 05-CV-5018, 2007 WL 2403573, at *12 (E.D.N.Y. Aug. 17, 2007) (malicious abuse of process). Accordingly, these claims are dismissed as well.

LaDoucier also sues defendant the City of New York for negligent hiring and retention (eighth state law claim) and negligent training and supervision (ninth state law claim) under New York law. (*See* FAC ¶¶ 250-254.) "A claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment." *Colodney v. Continuum Health Partners, Inc.*, No. 03 Civ. 7276, 2004 WL 829158, at *8 (S.D.N.Y. Apr. 15, 2004). "When an employee is acting within the scope of her employment, her employer may be held liable for the employee's negligence only under a theory of *respondeat superior*, and no claim may proceed against the employer for negligent hiring or retention." *Id*. (citing *Karoon v. New York City Transit Auth.*, 659 N.Y.S.2d 27, 29 (N.Y. App. Div. 2004)). It is well established that "it is within the scope of a police officer's duty to arrest a suspect once probable cause has been established." *Irish v. The City of New York*, No. 09 Civ. 5568, 2010 WL 5065896, at *5 (S.D.N.Y. Dec. 6, 2010); *James Biggs v. City of New York*, No. 08 Civ. 8123, 2010

WL 4628360, at *10 (S.D.N.Y. Nov. 16, 2010).  Accordingly, LaDoucier's negligent hiring and supervision claims are dismissed as well.

**Remaining State Law Claims**

> *Intentional Infliction of Emotional Distress*
>
> Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.

*Biggs*, 2010 WL 4628360, at *8.  "Plaintiff must plead and prove conduct which is so extreme and outrageous that it transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society, and must also present medical evidence in support of his claim."  *Id*. at *9 (internal quotation marks and citations omitted).  As the New York Court of Appeals has recognized, this is a high standard to reach.  *See Howell v. New York Post Co., Inc.*, 612 N.E.2d 699, 702 (N.Y. 1993) ("Indeed, of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (internal citations and quotation marks omitted)).

To the extent LaDoucier's FAC asserts his claim for intentional infliction of emotional distress against the defendant officers, it must be dismissed because those officers had probable cause to make their arrest.  *See Carey v. City of Mt. Vernon*, No. 09 Civ. 3191, 2010 WL 3912400, at *5 n.10 (S.D.N.Y. Sept. 13, 2010) (arrest made with

probable cause cannot give rise to claim for intentional infliction of emotional distress); *see also Csoka v. Cnty. of Suffolk*, 85 F. Supp. 2d 117, 123 (E.D.N.Y. 2000) ("A lawful arrest cannot support a claim for intentional or negligent infliction of emotional distress.").

The Court does not address the merits of LaDoucier's emotional distress claim against Nichols and dismisses the claim without prejudice as indicated *infra*.

### *Assault and Battery*

"To establish an assault claim under New York law, plaintiff must show that defendant placed the plaintiff in reasonable fear of imminent harmful or offensive bodily contact." *5 Borough Pawn, LLC v. Marti*, 753 F. Supp. 2d 186, 200-01 (S.D.N.Y. 2010). "To establish a claim for battery, the plaintiff must show that defendant intentional caused a wrongful physical contact with the plaintiff without his consent." *Id*. at 201. "If an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." *Id*. (citing *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001)). However, "[w]here an arrest is supported by probable cause, an officer will not be liable under theories of assault and battery for the 'use [of] physical force when and to the extent she or he reasonably believes [it is] necessary to effect the arrest.'" *Gomez v. City of New York*, No. 05 Civ. 2147, 2007 WL 5210469, at *11 (S.D.N.Y. May 28, 2007) (quoting *Lederman v. Adams*, 45 F. Supp. 2d 259, 268 (S.D.N.Y. 1999)).

LaDoucier's claims for assault and for battery, as against the defendant officers, fail for the simple reason that he alleges no facts at all indicative of either an

14

unreasonable wrongful physical contact by the officers or a reasonable fear of the same. The officers arrested LaDoucier with probable cause; but they might still be liable for state law assault and/or battery if their use of force was unreasonable or excessive. *See Williams v. City of White Plains*, 718 F. Supp. 2d 374, 379-80 (S.D.N.Y. 2010) (after dismissing false arrest claim on summary judgment, denying defendants summary judgment on assault and battery claims because dispute existed as to amount of force used by police in effecting arrest); *Armatas v. Maroulleti*, 2010 WL 4340437, at *15 (E.D.N.Y. Oct. 19, 2010) ("a plaintiff alleging battery on a lawful arrest ( *i.e.,* an arrest made with probable cause) must show that the force used was excessive.").

LaDoucier, however, alleges only (1) that officers arrested him and placed him in handcuffs, (FAC ¶¶ 106-109); (2) that they did not have probable cause, (*id*. ¶ 140); (3) that "[d]efendants' aforementioned actions placed [him] in apprehension of imminent harmful and offensive bodily contact," (*id*. ¶ 217); and (4) that "[d]efendant police officers and defendant [Reveron] touched [him] in a harmful and offensive manner," (*id*. ¶ 220). But LaDoucier does not allege any facts regarding how the officers touched him, what amount of force they used, or how they placed him in an apprehension of an immediate battery. In other words, LaDoucier does not allege material from which the Court can reasonably infer that the defendant officers are plausibly liable for assault or battery. As discussed *supra*, even accepting all of LaDoucier's allegations as true, defendant officers had probable cause to arrest him. LaDoucier's handcuffing alone, without any allegation "that excessive force was used by any officer in placing the handcuffs on him or guiding him [to] the station," cannot support a battery claim on a lawful arrest. *Armatas*, 2010 WL 4340437, at *15; *See Grant v. City of New York*, 500 F.

15

Supp. 2d 211, 216 (S.D.N.Y. 2007) (no allegation of "any facts which suggest that [plaintiff] was in any way physically harmed as a result of being placed in handcuffs."). As mentioned *supra*, note 2, Reveron has been dismissed from this case, so his tackling of LaDoucier is irrelevant.  And LaDoucier's mere recitation of the elements of New York assault and New York battery are insufficient to withstand a Rule 12(b)(6) motion. *See Iqbal*, 129 S. Ct. 1949.  Accordingly, LaDoucier's assault and battery claims are dismissed as against the defendant officers.

LaDoucier does allege, however, that Nichols "address[ed] [him] in an apparently hostile manner," that Nichols said "insulting and instigative things to [him]," that Nichols "bump[ed] up against [him] in an instigatory [sic] manner," that Nichols stared him down, and that Nichols continued this treatment as he walked to work.  (FAC ¶¶ 39, 41, 48, 63-64, 69.)  As with his intentional infliction of emotional distress claim, the Court will dismiss LaDoucier's assault and battery claims against Nichols without prejudice as indicated *infra*.

### *Remaining State Claims Against Nichols*

"Federal courts have supplemental jurisdiction over state law claims 'that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *DCML LLC v. Danka Business Systems PLC*, No. 08 Civ. 5829, 2008 WL 5069528, at *3 (S.D.N.Y. Nov. 26, 2008) (quoting 28 U.S.C. § 1367(a)) (alteration in original).  Though a court's exercise of that jurisdiction is discretionary, when "all federal claims have been dismissed before trial, the balance of factors . . . will point toward declining to exercise

16

jurisdiction over the state-law claims." *Id*. (alteration in original) (internal quotation marks omitted).

Since all of LaDoucier's federal claims have been dismissed, the Court declines to exercise jurisdiction over his remaining state law claims. These claims include, *in toto*, claims against Nichols for assault (third state law claim), battery (fourth state law claim), and intentional infliction of emotional distress (seventh state law claim). Because it is in theory possible for LaDoucier to prove these claims in state court, this dismissal is without prejudice.

## CONCLUSION

For the reasons stated above, the City Defendants' Motion to Dismiss [20] is GRANTED. All of LaDoucier's federal claims are dismissed with prejudice; as are his state law claims for false arrest, false imprisonment, malicious prosecution, malicious abuse of process, negligent hiring, and negligent supervision; and as are his state law claims for assault, battery, and intentional infliction of emotional distress as against the defendant officers. This dismissal is with prejudice because absent simply eliminating his allegations concerning what Nichols, Reveron, and Pompey told officers, LaDoucier cannot plead around the officers' probable cause; and because LaDoucier has already once amended his complaint. *See Commc'ns Partners Worldwide, Inc. v. Main Street Resources*, No. 04 Civ. 10003, 2005 WL 1765712, at *7 (S.D.N.Y. July 26, 2005) (dismissal "with prejudice because the Court finds that it would be futile to allow CPW to replead." (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003))). LaDoucier's state law claims for assault, battery, and intentional infliction of emotional distress as against

17

Nichols are dismissed without prejudice. The Clerk of the Court is directed to close all open motions in this case **[20]**, **[42]**, and **[45]**, and close this case.

SO ORDERED.

Dated: New York, New York
June **6**, 2011

_____
Richard J. Holwell
United States District Judge